UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| BRUCE MERRITT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>GLORIA HAMMOND, )<br>and ETHAN DARLING, )<br>)<br>Defendants. ) | Case No. 5:18-cv-200 |

## ORDER

In preparation for the hearing scheduled for August 4, 2022, the court issues the following order.

1. The hearing will be in-person in the Rutland courthouse.

2. The motion for reconsideration (Doc. 187) will be heard at the same time. Defendants shall submit any response to the motion not later than July 29, 2022. Any reply shall be submitted not later than August 3, 2022.

3. The court anticipates that the parties will be prepared to address two issues in particular at the hearing. The first concerns the motion for reconsideration:

    In the original complaint, Plaintiff alleges that he slipped on ice which formed after "water flowed off of the roof of the building and onto the parking area, instead of following the gutter and draining to the back of the building away from the parking area as intended." Doc. 1, ¶ 10.

    Plaintiff also alleges that Defendant Ethan Darling is negligent for "failing to sand the gravel parking area at any time on December 1, 2015, despite being on notice that the weather was raining, with the possibility of freezing rain." Doc. 1, ¶ 19(a).

    In his amended complaint, Plaintiff supplements these allegations with an allegation that Defendant Gloria Hammond as owner and lessor of the building failed to "grade the gravel parking area, to keep it level and flat, and allow proper drainage, and eliminate areas where icy puddling occurred and this exacerbated the existing hazardous weather conditions." Doc. 96, ¶ 17(d).

The court has previously ruled that Plaintiff has provided sufficient allegations that Mr. Darling and Postal Service employees both undertook some responsibility for maintenance of the parking lot and that these allegations are sufficient to overcome the Government's motion to dismiss. Doc. 111, pp. 9-10.

In the first summary judgment ruling (Doc. 167), the court returned to these themes, now assisted by the parties' discovery. Considering the evidence in the light most favorable to the plaintiff, the court permitted the case to go forward against Mr. Darling and the Postal Service on the grounds that there was some evidence that both parties played some role in maintaining the safety of the parking lot. Doc. 167, p. 12.

The court also denied the motion for summary judgment filed by Ms. Hammond as landlord. The basis for the ruling was that the lease with the postal service recognized Ms. Hammond's responsibility for maintaining the premises in good condition. In other words, she retained a duty to fix the gutters. Neither the motion nor the court's ruling considered whether there was any evidence that the broken gutter–visible in various photographs–played any role in the plaintiff's injury.

The court invited further briefing "regarding lessor tort liability and the duty to repair." Doc. 167, p. 16.

Ms. Hammond responded with a second motion for summary judgment (Doc. 169). This motion focused on the issue which had begun to concern the court: whether the "icy and untreated" condition that caused plaintiff to fall–at least as alleged–was due to a failure to remove snow and ice which accumulated from water running off the roof. Plaintiff's response identifies the missing gutter as the source of the ice on which he slipped. He attributes his fall to "water … flow[ing] into the parking area from the roof, instead of [being directed by the gutter toward the rear of the gutter where it was intended…". Doc. 170, p. 2.

The question for the court on summary judgment is whether there is record evidence to support Plaintiff's claim that he slipped on ice formed when water flowed off the roof, across the sidewalk, and approximately ten feet further to the location where he parked his truck. That would be a very large puddle or stream. The issue, of course, is not whether there has been such a flow of water since the days of Noah. Rather, it is whether there is evidence, if believed by the jury, to establish that such a flow of water, changing to ice, occurred on or before December 1, 2015.

The court granted summary judgment to Ms. Hammond because there was no record evidence that any witness observed water flowing from the roof or any other indication that the missing section of gutter allowed rainfall to reach the location where plaintiff parked. In the absence of an eyewitness, an expert such as a civil engineer could offer some opinion about the likelihood that water flowed from the roof to Plaintiff's parking space. There was no such witness. If tried on this record, the jury would be left to speculate whether rain from the roof traveled across the sidewalk and over the designated handicapped parking space with sufficient volume to reach the spot where Plaintiff parked. That was the basis for the summary judgment ruling.

Plaintiff returns to court with a motion for reconsideration, asserting essentially that he did not understand that the court would consider the issue of causation. "…[P]laintiff was not given the opportunity to submit such evidence [that the missing section of the gutter played any role in causing Mr. Merritt's injuries." Doc. 187, p. 5. He now offers the following evidence:

    a. Francene Ellis, postmaster from 1994 to 2010, can testify that during her period of employment, rain water would run off the roof and get on the parking lot surface due to the missing gutter. Runoff would cause icy conditions in the flat parking lot.

    b. According to Mr. Darling, earlier on the day of Plaintiff's fall (December 1, 2015), it was pouring rain. Then the rain stopped. Temperatures dropped in the afternoon. It began to rain in the mid-afternoon, and the light rain froze on the gravel parking lot. Another patron (Tanya Blood) has provided an affidavit that the conditions in the parking lot when plaintiff fell were "glare ice" and the weather conditions that afternoon were "sleet and freezing rain."

The court will consider these new facts when it rules on the motion for reconsideration. If plaintiff or Ms. Hammond has any additional undisputed facts to add, these must be submitted prior to the hearing on August 4, 2022.

4. Finally, the court takes up a new issue. There will be at least two defendants at trial: Mr. Darling and the United States of America. Mr. Darling is entitled to a jury trial. The Postal Service can only be sued in the name of the United States through a court trial pursuant to the procedures of the Federal Tort Claims Act. The court has previously stated a preference for conducting one trial at which a jury would consider the potential liability of Mr. Darling and the court would rule on the claim against the United States. *See United States v. Yellow Cab Co.*, 340 U.S. 543 (1951)(suggesting jury issues be tried to a jury; court issues by the judge in a manner similar to trials mixing claims for money damages and injunctive relief).

The presence of two (or more) defendants raises potential issues of comparative negligence. There are at least four possible procedures:

a. The jury trial occurs entirely separately from the court trial. This would require two trials. The evidence in the jury trial involving Mr. Darling would concern his alleged negligence only (and any comparative negligence by the plaintiff) and would include no comparison of the relative fault of the two defendants. This procedure would be highly inefficient and duplicative.

b. All claims are tried at the same time with no instructions concerning the apportionment of liability between the two defendants. The evidence relevant to both cases would overlap. The jury would be instructed to consider Mr. Darling's fault, if any, and the amount of damages. The court would consider the United States' fault, if any, and make an independent decision concerning the amount of damages. If there is evidence relevant only to the claim against the United States, it would be heard after the conclusion of the jury trial.

3

>> There would be further litigation over issues of set-off and duplicative recovery if plaintiff recovered against both parties.
>
> c. The trials occur at the same time and the jury is instructed to apportion fault in percentage terms between the two defendants, but the jury is advisory only with respect to the claim against the United States. The court considers the advisory apportionment and makes an independent decision about the percentage of fault (if any) borne by the United States as well as the appropriate amount of any damage award.
>
> d. The parties consent to a single court trial at which the judge makes findings concerning the relative fault of all three parties and damages.

This issue is surprisingly complicated. The court will discuss it further with counsel at the hearing on August 4.

Dated at Rutland, in the District of Vermont, this 25th day of July, 2022.

_____
Geoffrey W. Crawford, Chief Judge
United States District Court